UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES D.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C21-5413-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting his testimony and the opinion of treating physician Brian Lear, M.D. (Dkt. # 10 at 1.) Plaintiff also argues that the ALJ's decision should be reversed due to a constitutional violation in the removal provisions applicable to former Commissioner Andrew Saul. (*Id.*) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1974, has two years of college education, and has worked as a volunteer firefighter, box manufacturing machine operator, and fish hatchery worker. AR at 267,

ORDER - 1

291. At the time of the most recent administrative hearing, Plaintiff was working one day per month as a volunteer firefighter. *Id.* at 1896.

In June 2016, Plaintiff applied for benefits, alleging disability as of February 15, 2013. AR at 226-29. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 180-82, 187-95. After the ALJ conducted a hearing in June 2018 (*id*. at 38-105), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 17-37.

The Appeals Council denied Plaintiff's request for review (AR at 1-7), but the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings in light of evidence submitted for the first time to the Appeals Council. *Id*. at 1957-61. A different ALJ held a hearing on remand (*id*. at 1879-1929), and subsequently issued another decision finding Plaintiff not disabled. *Id*. at 1839-70. As the Appeals Council declined to assume jurisdiction, Plaintiff now seeks review of this final decision of the Commissioner. (Dkt. # 1.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Discounting Dr. Lear's Opinion

Dr. Lear opined in 2019 that, *inter alia*, Plaintiff could sit for about two hours total and stand/walk for about two hours total per day workday, would be off-task 15% of a workday, and would miss two days of work per month. AR at 2225-27. The ALJ discounted this opinion, finding it: (1) inconsistent with the normal findings and improvement document in treatment notes from Summit Pacific Medical Center; (2) inconsistent with evidence that Plaintiff's low back and right leg symptoms improved with surgery and responded positively to pain medication; (3) inconsistent with Plaintiff's activities; and (4) speculative as to the absenteeism limitation. AR at 1865. Plaintiff argues that these reasons are not legally sufficient, and the Court will address each in turn.

### 1.   Legal Standards[1]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th

---

[1] Because Plaintiff applied for benefits before March 27, 2017, 20 C.F.R. § 404.1527 applies to the ALJ's consideration of medical opinions.

Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

                2.       *Inconsistent with Summit Pacific Treatment Notes*

The ALJ cited various normal findings contained in the Summit Pacific treatment notes that he found to be inconsistent with the limitations described by Dr. Lear, specifically evidence of normal gait, "strong neurological functioning of the extremities," stable post-surgery findings, and "effective response" to pain medication. AR at 1865 (referencing, *e.g.*, *id*. at 642 (Plaintiff reports "doing well" on current pain medication regimen), 646 (normal gait), 1095 (Plaintiff's mood improved with medication), 1106 (normal gait and sensation, full strength), 2199 (normal mood and gait), 2287 (Plaintiff reports "doing well" and that his pain is "well controlled" on medication regimen), 2289 (normal gait and no edema), 2294 (normal mental status findings), 2297 ("overall good pain control"), 2331 (normal gait and no edema)).

Plaintiff disputes whether these normal findings undermine Dr. Lear's opinion, arguing that Dr. Lear was aware of those findings and nonetheless opined that Plaintiff's limitations were disabling. Specifically, Plaintiff notes that Dr. Lear's treatment record confirm his chronic back pain that never resolved and that his medications were gradually increased. (Dkt. # 10 at 13-15.) The ALJ's decision is consistent with that argument, however, because the ALJ found that Plaintiff experienced severe physical impairments and traced Plaintiff's various medications and increases. AR at 1847-57. Accordingly, Plaintiff has not shown that the ALJ erred in characterizing the Summit Pacific treatment record as documenting many normal functional findings and improvement with treatment, or in finding those treatment notes to be inconsistent

ORDER - 4

with the severity of limitations Dr. Lear described. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

### 3. Inconsistent with Evidence of Improvement

The ALJ found that Dr. Lear's opinion was inconsistent with the evidence showing that Plaintiff's low back and right leg symptoms improved with surgery. AR at 1865. Plaintiff emphasizes that he continued to experience chronic pain even after surgery (dkt. # 10 at 11-16), but as mentioned in the previous section *supra*, the ALJ acknowledged that the treatment record documented Plaintiff's reports of pain and need for pain medication even post-surgery. *See* AR at 1850-57. Plaintiff has not shown that the ALJ ignored any particular evidence or otherwise mischaracterized the record, and thus has failed to establish error in this line of the ALJ's reasoning. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may consider improvement with treatment in discounting physician's opinion).

### 4. Inconsistent with Activities

The ALJ found that Plaintiff's activities — namely his ability to care for his teenage daughter, manage his own daily activities independently, exercise, fish, hunt, serve as a volunteer firefighter, and work as a part-time volleyball coach — were inconsistent with the limitations described by Dr. Lear, and suggest that his limitations were not as severe as Dr. Lear opined. AR at 1865.

Plaintiff argues that his activities were performed on his own schedule and therefore do not demonstrate that he could work full-time. (Dkt. # 10 at 16). But the ALJ did not cite the activities as evidence that Plaintiff could work full-time. Instead, the ALJ found that Plaintiff's activities were inconsistent with Dr. Lear's opinion, and this finding was reasonable. Hunting,

ORDER - 5

fishing, coaching volleyball, and serving as a volunteer firefighter, in particular, are reasonably inconsistent with the sitting, standing and/or lifting limitations described by Dr. Lear. The ALJ did not err in looking to Plaintiff's activities or in finding that they undermined Dr. Lear's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

### 5. Absenteeism

As noted above, Dr. Lear opined that Plaintiff would miss two days of work per month. AR at 2227. The form opinion asked Dr. Lear to explain why such absenteeism would occur, and Dr. Lear did not answer that question. *Id*. The ALJ found that Dr. Lear's absenteeism opinion was speculative and inconsistent with the objective record and Plaintiff's activities. *Id*. at 1865.

Plaintiff does not specifically challenge this line of reasoning. Particularly because Dr. Lear declined to explain the basis for this opinion, the Court finds no error in the ALJ's characterization of the absenteeism opinion as speculative, or in the ALJ's discounting of this limitation on this basis. *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").

In sum, because the ALJ provided several legitimate reasons to discount Dr. Lear's opinion, the Court affirms this portion of the ALJ's decision.

### B. The ALJ Did Not Err in Discounting Plaintiff's Testimony

Plaintiff contends that the ALJ relied on the same reasons to discount his testimony as he cited as the reasons to discount Dr. Lear's opinion. (Dkt. # 10 at 16-17.) The ALJ did cite some of the same reasons, namely lack of corroboration in the treatment record, evidence of improvement, and activities, but also cited several examples of other inconsistencies that also

ORDER - 6

undermined Plaintiff's testimony. *See* AR at 1857-60. Specifically, the ALJ cited evidence showing that: (1) providers believed Plaintiff's complaints were out of proportion with the objective evidence; (2) Plaintiff demonstrated a disability conviction; and (3) Plaintiff's allegations of lack of improvement, leg swelling, and need for an assistive device were contradicted by the record. *Id*. An ALJ's reasons to discount a claimant's testimony must be clear and convincing in the absence of evidence of malingering, as is the case here. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff references arguments made with respect to Dr. Lear's opinion to show that the ALJ also erred in discounting Plaintiff's testimony, but as explained *supra*, the Court found that the ALJ's reasons were sufficient with respect to Dr. Lear's opinion. The Court finds that these reasons also form a sufficient basis to discount Plaintiff's testimony because the ALJ cited objective evidence that failed to corroborate and/or was inconsistent with Plaintiff's allegations of disabling limitations, the ALJ cited evidence that Plaintiff's pain was controlled by medication and improved with surgery, and the ALJ cited evidence that Plaintiff engaged in activities inconsistent with his alleged limitations. AR at 1857-58. These are legally sufficient reasons to discount Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they: (1) contradict the claimant's testimony; or (2) "meet the threshold for transferable work skills"); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (contrary to plaintiff's claims of lack of improvement, physician reported symptoms improved with use of medication).

ORDER - 7

Furthermore, the ALJ's additional reasons also support the ALJ's assessment of Plaintiff's testimony. The evidence of Plaintiff's providers finding his complaints to be out of proportion with the objective evidence, the evidence of his disability conviction, and the specific examples of internal inconsistencies in Plaintiff's testimony all support the ALJ's discounting of Plaintiff's allegations. *See, e.g.*, *Breon M. v. Comm'r of Social Sec.*, 2020 WL 3798941, at *4 (W.D. Wash. Jul. 6, 2020) (affirming an ALJ's discounting of plaintiff's allegations based in part on evidence of plaintiff's disability conviction and providers' findings that plaintiff's complaints were out of proportion with the objective evidence); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) (indicating that ALJs may "consider the consistency of the [claimant's] own statements" in evaluating the claimant's testimony).

Because the ALJ provided multiple valid reasons to discount Plaintiff's allegations, the Court affirms this portion of the ALJ's decision.

### C. The Procedure for Removal of the Commissioner of Social Security is Unconstitutional but Does Not Invalidate the ALJ's Decision

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny his benefits was made by individuals who had not properly been delegated authority to make such decisions.[2]

---

[2] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here — and the one to which Commissioner Saul *was* subject — caused him harm.

ORDER - 8

In his complaint, Plaintiff did not include any separate claim based on a constitutional violation.[3] (*See* dkt. # 1.) Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Consequently, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 555 n.3.

In the absence of any supporting facts pleaded in the complaint, referencing a potential constitutional violation in the complaint and then fleshing out the claim in briefing is insufficient to present the claim to the Court. *Cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (Ninth Circuit "precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086-87 (9th Cir. 2019). Plaintiff contends he "does not forfeit constitutional challenges by raising them in court for the first time."

---

[3] The Court recognizes this case was filed utilizing the Court's "Pilot Program for Electronic Service in Social Security Cases," which applies only to actions against the Commissioner in which "the only claim that is being brought is pursuant to 42 U.S.C. § 405(g)." Amended General Order 04-15 at 2. An action alleging any claim other than a § 405(g) claim must be filed through a different avenue. *Id.* ("In particular, the Pilot Program does not apply to (a) complaints that include claims against the Commissioner in addition to, or other than, those brought pursuant to 42 U.S.C. § 405(g)[.]"). Whether filed under a § 405(g) claim or on its own, Plaintiff was not foreclosed from asserting his constitutional claim in his complaint.

ORDER - 9

(Dkt. # 10 at 8.) The issue, however, is not that he failed to raise the issue before the agency, but that he failed to state a claim in his complaint before this Court. Briefing on Plaintiff's agency appeal, like briefing on a summary judgment motion, "is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Although Plaintiff contends that his constitutional challenge was properly pleaded (dkt. # 10 at 9-11), even if Plaintiff is correct, it would not impact the outcome here because the Court's review of Plaintiff's constitutional claim leads the Court to conclude that it would not require remand. For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection but finds that the unconstitutional provision did not deprive the Commissioner of the authority to issue a decision on Plaintiff's claim and that Plaintiff has not alleged any compensable harm that requires reversal of the ALJ's decision denying benefits.

> 1. *The Commissioner's Tenure Protection is Unconstitutional, but No Unconstitutional Protection Applies to ALJs or the Appeals Council*

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in section 902 violates the Constitution's separation of powers.[4] In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C.

---

[4] The Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Dkt. # 14 at 2.)

§ 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of powers. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

Plaintiff also contends that the ALJs and administrative appeals judges ("AAJs") on the Appeals Council are subject to an additional layer of removal protection under 5 U.S.C. § 7521(a) and 5 U.S.C. § 7543(a), respectively, which is unconstitutional under *Free Enterprise Fund v. Public Company Accounting Oversight Board*. In that case, the Supreme Court considered tenure protections applicable to members of the Public Company Accounting Oversight Board, who were appointed by the Securities and Exchange Commission ("SEC") and could be removed by SEC commissioners only for "good cause," and SEC commissioners in turn could be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Free Enterprise Fund*, 561 U.S. 477, 486-87 (2010) (cleaned up). The Court found that

these dual layers of removal protection had created "a Board that is not accountable to the President, and a President who is not responsible for the Board." 561 U.S. at 495. Because the Board had the power to execute and enforce laws, it had been given "executive power without the Executive's oversight," and such a structure was "incompatible with the Constitution's separation of powers." 561 U.S. at 498.

This case is distinguishable from *Free Enterprise Fund* because SSA ALJs and AAJs have not been given executive power, and instead perform "adjudicative rather than enforcement or policymaking functions[.]" *Free Enterprise Fund*, 561 U.S. at 507 n.10. This distinction was acknowledged in a recent Ninth Circuit case, *Decker Coal Company v. Pehringer*, which contrasted Department of Labor ("DOL") ALJs adjudicating claims under the Black Lung Benefits Act and performing "purely adjudicative function[s,]" with members of the Public Company Accounting Oversight Board "exercis[ing] policymaking and enforcement functions[.]" 8 F.4th 1123, 1133 (9th Cir. 2021). The *Decker Coal* court also recognized that because the DOL chose, rather than was forced by Congress, to employ ALJs to adjudicate benefits claims, it could not be said that Congress wrested executive power for itself away from the President. 8 F.4th at 1134.

The Commissioner argues that *Decker Coal* is analogous here, both because SSA ALJs and AAJs perform adjudicative functions and because there is no statutory requirement that SSA employ ALJs or AAJs to adjudicate benefits claims. (Dkt. # 20 at 5.) The Court agrees. Plaintiff attempts (dkt. # 15 at 4-5) to distinguish *Decker Coal* on the grounds that the decisions of DOL ALJs were reviewable by people directly subject to the President's authority, whereas SSA ALJs and AAJs are insulated by the unconstitutional protection afforded to the Commissioner. *See Decker Coal*, 8 F.4th at 1135. Even if *Decker Coal* can be factually distinguished on this basis,

ORDER - 12

the President's ability to remove the DOL Secretary at will was only one of multiple reasons that the Ninth Circuit cited in finding no constitutional violation. *See id*. The Court finds that because SSA ALJs and AAJs perform adjudicative functions, and because SSA voluntarily chose to employ them to serve in that way, the tenure restrictions applicable to SSA ALJs and AAJs do not violate the separation of powers.

> 2. *The Commissioner's Unconstitutional Tenure Protection Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim*

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand. Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case. Plaintiff's argument fails.

First, the removal provision is severable. In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[5] Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's

---

[5] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id*. at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

ORDER - 13

authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").

        3.      *Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection*

Third, Plaintiff has not made any clear allegation that the removal clause in § 902(a)(3) inflicted compensable harm. In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case the action challenged by Plaintiff is the ALJ's decision denying benefits. Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf.* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Plaintiff has made no clear allegation that Commissioner Saul's

ORDER - 14

unconstitutional tenure protection resulted in compensable harm to him. The ALJ's decision here was based upon an uncontested factual record and the application of established law, including caselaw, which generally cannot be changed by the Commissioner.

Nor does Plaintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal indicate that Plaintiff was harmed. (*See* dkt. # 10 at 6-7.) To the extent Plaintiff generally suggests that Commissioner Saul deprived him of due process (*id.*), there is no support for this claim. *Cf. Hoye v. Sullivan,* 985 F.2d 990, 992 (9th Cir. 1992) ("The mere allegation of a substantive due process violation is not sufficient to raise a 'colorable' constitutional claim to provide subject matter jurisdiction."). Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and "reduced due process protections for benefits appeals hearings," this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one. *See* https://www.cnn.com/2021/07/09/politics/social-security-commissioner-fired-by-biden/index.html (last visited Feb. 15, 2022). Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce the process available to a claimant, it is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due, and Plaintiff has not shown that he did not receive due process in this case.

Plaintiff goes on to argue that the constitutional violation constitutes "harm in itself" (dkt. # 15 at 4) that would entitle him to the remand he seeks, relying on *Lucia* and *Free Enterprise Fund*, but neither of those cases supports that proposition. The constitutional violation at issue in *Lucia* related to the Appointments Clause, and that violation deprived the ALJ of the authority to adjudicate claims. 138 S. Ct. at 2056. For reasons addressed *supra*, the Court finds no

Appointments Clause violation present here that would invalidate the benefits decisions from the outset.

Likewise, *Free Enterprise Fund* does not indicate that a constitutional violation constitutes harm in itself that would entitle Plaintiff to a remand, but instead found that the plaintiffs in that case were entitled to "declaratory relief sufficient to ensure that the reporting requirements and auditing standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enterprise Fund*, 561 U.S. at 513 (citing *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)). Plaintiff has not requested declaratory relief in this case, and *Free Enterprise Fund* does not stand for the proposition that Plaintiff is entitled to the relief that he has sought, *i.e.*, a reversal and remand of the ALJ's decision. *See also Decker Coal*, 8 F.4th at 1137 (declining to unwind a DOL ALJ decision absent a showing of harm, where there was no showing that an allegedly unconstitutional removal provision had tainted the decision).

Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm. Numerous district courts have agreed with this conclusion (*see* dkt. # 20 at 9-10 n.3 (collecting cases)), and Plaintiff has not persuaded the Court otherwise.

### V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 22nd day of February, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge